IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES JONAS, Individually** | ) | CASE NO. 1-23-cv-2-58-PAB |
| **and as Executor of the Estate of** | ) | |
| **Sharon Jonas, Deceased** | ) | |
| **7619 Miami Avenue** | ) | **JUDGE PAMELA A. BARKER** |
| **Cincinnati, OH 45243** | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **LTL MANAGEMENT, LLC** | ) | |
| **c/o C.T. Corporation System** | ) | |
| **160 Mine Lake Court, Suite 200** | ) | |
| **Raleigh, NC 27615** | ) | |
| | ) | |
| | ) | |
| **JOHNSON & JOHNSON** | ) | |
| **c/o C.T. Corporation System** | ) | |
| **4400 Easton Commons Way, Suite 125** | ) | |
| **Columbus, OH 43219** | ) | |
| | ) | |
| **JOHN DOES 1-100** | ) | |
| **Manufacturers, Sellers, Suppliers or** | ) | |
| **Installers of Asbestos-Containing** | ) | |
| **Products** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Charles Jonas, Individually and as Executor of the Estate of Sharon Jonas, Deceased, brings this action for damages against Defendants, demanding a trial by jury. Plaintiffs' First Amended Complaint makes the following allegations:

### NATURE OF ACTION:

1. Decedent Sharon Jonas was diagnosed with malignant mesothelioma in the pleura of her lungs on April 12, 2012. On December 15, 2022, Decedent's mesothelioma spread to the peritoneum of her lungs. Decedent Sharon Jonas died of mesothelioma on February 14, 2022.

1

2. Plaintiffs allege that Decedent Sharon Jonas developed mesothelioma and subsequently died as a result of exposure to asbestos dust contained in Johnson & Johnson Baby Powder products, talcum powder products that were contaminated with asbestos.

3. From approximately 1950-1990, Decedent Sharon Jonas was repeatedly exposed to asbestos dust from Johnson & Johnson Baby Powder products as she applied the talcum powder products to herself and her three (3) children.

4. Johnson & Johnson Baby Powder products were designed, marketed, manufactured, distributed, supplied, and/or sold by Defendant Johnson & Johnson (as a manufacturer and supplier of asbestos-containing Johnson & Johnson Baby Powder products).

5. Defendant LTL Management LLC (LTL) is a subsidiary of Johnson & Johnson (J&J) that was established in October of 2021 to hold and manage claims related to lawsuits alleging that J&J's talc-based baby powder caused many cases of ovarian cancer, mesothelioma, and other serious health issues. LTL is thus the legal entity responsible for holding and managing all legal claim's related to J&J's cosmetic talc products.

## THE PARTIES

6. Plaintiff Charles Jonas and Plaintiff's Decedent Sharon Jonas are or were residents of the State of Ohio.

7. Plaintiff's Decedent Sharon Jonas was exposed to asbestos from Johnson & Johson Baby Powder products in the State of Ohio.

8. Upon information and belief, and at all times relevant and pertinent hereto, Defendants designed, marketed, manufactured, distributed, supplied and/or sold asbestos-containing talcum powder products or otherwise participated in placing asbestos-containing talcum powder products in the stream of commerce, including to Ohio consumers such as

Decedent.

9. Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey. Defendant Johnson & Johnson is being sued as a manufacturer and supplier of asbestos-containing Johnson's Baby Powder products.

10. Defendant LTL Management LLC is a limited liability company organized in North Carolina with its principal place of business in New Jersey. Defendant LTL Management LLC is being sued as a manufacturer and retail supplier of Johnson's Baby Powder products. Defendant LTL Management LLC is a subsidiary of Johnson & Johnson (J&J) that was established in October of 2021 to hold and manage claims related to lawsuits alleging that J&J's talc-based baby powder caused many cases of ovarian cancer, mesothelioma, and other serious health issues. LTL is thus the legal entity responsible for holding and managing all legal claim's related to J&J's cosmetic talc products.

11. The real names and addresses of Defendants John Does 1-100 manufacturers, sellers or installers of asbestos-contaminated talc products have not been determined, despite reasonable efforts of the Plaintiffs to do so.

12. At all times relevant and pertinent hereto, Defendant Johnson & Johnson and Defendant LTL Management, LLC were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of Ohio, or the laws of some other foreign jurisdiction, and that said Defendants were authorized to do and are regularly doing business in the State of Ohio.

13. During her lifetime, Decedent purchased and/or was exposed to asbestos from Johnson & Johnson Baby Powder products mined, milled, manufactured, sold, or distributed by each of the above-named Defendants, individually or through its predecessors or subsidiaries.

14. Decedent purchased and used Johnson & Johnson Baby Powder products in the intended manner, without significant change in the products' condition and, being unaware of the dangerous properties of asbestos, relied on Defendants' instructions and representations as to the safety of the products and proper methods of using and handling the products.

15. Defendants, acting through their servants, employees, agents, and representatives, caused asbestos and asbestos-contaminated talc products to be placed in the stream of interstate commerce.

16. Decedent's exposure to and inhalation of asbestos from Defendants' products caused her to develop mesothelioma. Plaintiff's alleged causes of action arise out of, or are incidental to each Defendants' interstate, intrastate, and international business ventures conducted in the United States, including Ohio.

17. As a direct and proximate result of the Defendants' conduct, Plaintiffs have incurred medical, hospital, professional, and other expenses, and Decedent Sharon Jonas was prevented from attending to her usual activities prior to her death.

18. As a direct and proximate result of the Defendants' conduct, Plaintiffs' Decedent Sharon Jonas sustained permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system, permanent physical functional injury that permanently prevented the injured person from being able to independently care for self and perform life-sustaining activities, and death.

19. As a direct and proximate result of the Defendants' conduct, Plaintiffs' Decedent Sharon Jonas sustained permanent injuries to her person and body, lungs, respiratory and cardiovascular system; suffered great physical, mental, and nervous pain and suffering, mental anguish; suffered from reasonable and justifiable fears of progressive and irreversible incapacity

4

and inability to carry on his usual functions; increasing discomfort; cancer; shortened life-span; impairment to her quality of life; disfigurement; death; and any other intangible loss.

20. The above-named Defendants have, at all times material to this cause of action, committed a tortious act within the state by manufacturing, selling, and disseminating to the public inherently dangerous products: (a) without testing said products to determine their harmful effects on persons coming into contact with said products; and (b) by failing to take any reasonable precautions or to exercise reasonable care to adequately or sufficiently warn Decedent and other persons similarly situated, of the risks, dangers, and harm of contracting lung disease, mesothelioma, lung cancer, and other forms of cancers, through their exposure to, contact with, use of, handling, or manipulation of Defendants' products and the consequent inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said products.

**FIRST CAUSE OF ACTION: STATUTORY PRODUCTS LIABILITY**
(As to Defendant Johnson & Johnson and LTL Management, LLC)

Plaintiff adopts, re-alleges and incorporates the allegations in paragraphs set forth above, and further alleges the following:

21. Plaintffs bring this claim for relief against Defendants for product liability under Ohio Revised Code § 2307.71, et seq. At all times relevant and pertinent hereto Defendants were "manufacturers" and/or "suppliers" of asbestos as those terms are defined under Ohio Revised Code §2307.71.

22. Johnson & Johnson Baby Powder products, as manufactured and/or supplied by the aforementioned Defendants was defective in manufacture and construction as described in Ohio Revised Code §2307.73; were defective in design or formulation as described in Ohio Revised Code §2307.75; were defective due to inadequate warnings and instructions as described in Ohio Revised Code §2307.76; and were

5

        defective because they did not conform to representations made by their manufacturers and suppliers as described in Ohio Revised Code §2307.77.

23. Each of the defective conditions of Johnson & Johnson Baby Powder as described above, pursuant to Ohio Revised Code §2307.73, were a proximate cause of the harm for which Plaintiff seeks to recover compensatory damages. Furthermore, each of the aforementioned Defendants who acted as suppliers are liable in that capacity for compensatory damages and as if they were the manufacturers in accordance with Ohio Revised Code §2307.78.

24. At all material times, Defendants mined, milled, or manufactured the asbestos-containing talc found in Johnson & Johnson Baby Powder, and sold, supplied, distributed, and manufactured Johnson & Johnson Baby Powder.

25. Approximately between the years 1950 and 1990, Decedent or her family members regularly purchased Johnson & Johnson Baby Powder.

26. Approximately between the years 1950 and 1990, Decedent used Johnson & Johnson Baby Powder on herself and on her children.

27. Plaintiffs state there was, in fact, a defect in the asbestos-contaminated Johnson & Johnson Baby Powder manufactured, sold, distributed, marketed, supplied, advertised, designed, developed, labeled, researched, and/or installed by the Defendants. Such defect(s) was/is dangerous to the health and well-being of Plaintiff's Decedent and others exposed to such products and that such defect was the direct and proximate cause of Decedent's injuries, death, and losses.

28. Defendants' product was, by reason of its design, in a condition unreasonably dangerous to users, such as Decedent, and said product was expected to, and did, reach Decedent without substantial change affecting that condition.

29. The product, which called for the use of talc that was contaminated with asbestos, which was sold and/or supplied by Defendants, and to which Plaintiff's Decedent was exposed, was defective and unsafe because of its design for its intended uses and purposes in that they were more dangerous than what an ordinary consumer or user would expect and the risks incident to the use of the products outweighed any benefits of the product's utility.

30. At all material times, Defendant knew, or in the exercise of reasonable care, should have known, that Decedent or others similarly situated would purchase, use, and be exposed to asbestos from using Johnson & Johnson Baby Powder by inhaling asbestos fiber emitted or released from the same.

31. Defendants' product, to which the Decedent was exposed, was used in the manner in which it was intended.

32. While using, consuming, and applying Johnson & Johnson Baby Powder, for which Defendants are responsible, Decedent inhaled asbestos fibers contained within and emitted from Johnson & Johnson Baby Powder, causing decedent to eventually develop mesothelioma. Exposures to Johnson & Johnson Baby powder was harmful and substantially contributed to causing Decedent's mesothelioma.

33. At all material times, Defendants knew or should have known that Johnson & Johnson Baby Powder manufactured, sold, supplied, or distributed by Defendants contained asbestos.

34. At all material times, Defendants knew or should have known that exposure to asbestos can cause serious injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, and other forms of cancer.

35. At all material times, Defendants knew or should have known, that Decedent's use of Johnson & Johnson Baby Powder mined, milled, manufactured, sold, supplied, or distributed by Defendants was harmful and could cause serious injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, and other forms of cancer.

36. At all material times, Defendants knew or should have known, that Johnson & Johnson Baby powder would be used by and around Decedent, or those similarly situated, without inspection for defects and furthermore, that Decedent's inspection of such products would not have revealed the asbestos fibers or underlying danger contained in Johnson & Johnson Baby Powder; or that exposure to the same could cause severe injury and death. These facts, known to or readily ascertainable by Defendants, made such products inherently and unreasonably dangerous in that Decedent could not know nor contemplate the dangers of inhaling asbestos fibers from, in such products that Decedent used or was exposed to during her lifetime.

37. At all material times, Defendants could have utilized a substitute material for the asbestos-containing talc found in Johnson & Johnson Baby Powder.

38. At all material times, Defendants failed to adequately test Johnson & Johnson Baby Powder before offering it for sale and use so that Decedent, and others similarly situated, would not inhale the asbestos fibers resulting from the ordinary and foreseeable use of said products and thereby expose themselves to the development

of fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, and/or other forms of cancer as a result of such inhalation of the asbestos and dust fibers.

39. At all material times, Defendants owed a duty to Decedent to (a) adequately warn Decedent of the dangerous characteristics of Johnson & Johnson Baby Powder; (b) adequately warn Decedent that she could develop fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, and other forms of cancer, as a result of being exposed to asbestos emitted from Johnson & Johnson Baby Powder; (c) place adequate warnings on or in the containers of Johnson & Johnson Baby Powder warning of the dangers to one's health of coming in contact with asbestos and of the gravity of the risk and extent of danger that Decedent was exposing herself to by using Johnson & Johnson Baby Powder; and (d) use reasonable care in manufacturing, selling, and/or distributing Johnson & Johnson Baby Powder according to Defendants' specifications requiring that Johnson & Johnson Baby Powder be asbestos free.

40. At all material times, Defendants were negligent, failed to exercise reasonable care, and breached their duties to Decedent by failing to (a) adequately warn Decedent of the dangerous characteristics of Johnson & Johnson Baby Powder; (b) adequately warn Decedent that she could develop fatal injuries including, but not limited to, mesothelioma, asbestosis, lung cancer, and other forms of cancer, as a result of being exposed to asbestos emitted from Johnson & Johnson Baby Powder; (c) place adequate warnings on or in the containers of Johnson & Johnson Baby Powder warnings of the dangers to one's health of coming in contact with asbestos

and the gravity of the risk and extent of danger that Decedent was exposing herself to by using Johnson & Johnson Baby Powder; and (d) manufacture, sell, and/or distribute Johnson & Johnson Baby Powder according to Defendants' specifications requiring that Johnson & Johnson Baby Powder be asbestos free.

41. Defendants' Johnson & Johnson Baby Powder was in a defective condition and unreasonably dangerous, in that the product:

    a. Suffered from manufacturing defects and were unreasonably dangerous because, as a result of Defendants' inability to manufacture, sell, and/or distribute Johnson & Johnson Baby Powder according to Defendants' specifications requiring that Johnson & Johnson Baby Powder be asbestos free, were different from their intended design and failed to perform as safely as the intended design would have performed.

    b. Did not provide adequate warning of the potential harm that might result from exposure to asbestos fibers and asbestos-containing dust and, alternatively, did not have adequate instructions for safe use of the product.

    c. Did not have warnings to persons, such as decedent, who had been, or reasonably may have been, exposed to Defendants' asbestos fibers and asbestos-containing products, of their disease potential, the proper steps to take to reduce harmful effects of previous exposure, the need to have periodic chest x-rays and medical examinations including the given histories which revealed the details of the previous exposure, and the need to have immediate and vigorous medical treatment for all respiratory problems.

    d. By design, contained asbestos, a substance deleterious, poisonous, and highly harmful to decedent.

42. Decedent, unaware of the defective and unreasonably dangerous condition of Defendants' products at a time when such products were being used for the purposes for which they were intended, was exposed to asbestos contained in Defendants' asbestos-containing product.

43. Decedent, unaware of the hazards and defects in Defednants' products, was exposed to asbestos fibers, causing her to develop mesothelioma and making said asbestos-containing products unsafe for the purpose of handling, use, and application of the same.

44. As a result of Defendants' negligence and failure to exercise reasonable care, Decedent sustained extensive exposure to asbestos from Johnson & Johnson Baby Powder sold, supplied, or distributed by Defendants, causing Decedent to develop mesothelioma and pass away from the same on February 14, 2022.

45. Defendants' negligence and failure to exercise reasonable care was a proximate cause of the harm to Decedent and Decedent's death.

46. As a direct and proximate result of the product defects as described herein, Decedent was caused to contract diseases and injuries to her body, including mesothelioma. As a result of her condition, Decedent suffered severe pain, mental anguish, depression, and other mental disorders; incurred medical expenses for treatment of physical and mental injuries; and suffered physical handicap/impairment. Said injuries were permanent and continuing in nature, causing Decedent to horribly suffer until her eventual death.

**SECOND CAUSE OF ACTION: PUNITIVE DAMAGES**
(As to Defendant Johnson & Johnson and Defendant LTL Management, LLC)

Plaintiff adopts, re-alleges and incorporates the allegations in all paragraphs set forth above, and further alleges the following:

47. Plaintiff is informed and believes that Defendants and their predecessors in interest researched, tested, manufactured, labeled, marketed, used, distributed, and sold their asbestos and asbestos-containing Johnson & Johnson Baby Powder product with conscious disregard for the safety of Plaintiff's Decedent and other users of said products, in that said Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to their asbestos-containing product on their premises, including but not limited to lung cancer, mesothelioma, other forms of cancer, and asbestosis.  Said knowledge was obtained, in part, from scientific studies and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendants, and which knowledge was obtained by Defendants during the time they manufactured, distributed, used, or sold their products.

48. During the time Defendants manufactured, distributed, used, or sold their products, Defendants were aware that Plaintiff's Decedent and other members of the general public who would use or be exposed to their asbestos-contaminated Johnson & Johnson Baby Powder had no knowledge or information that the product could cause injury.  Further, Defendants knew that Plaintiff's Decedent and the general public who used or were exposed to this product would, and in fact did assume their exposure to the product was safe, when in fact it was extremely hazardous to human life.

49. Despite this knowledge, Defendants opted to manufacture, distribute, use, and sell asbestos and asbestos-containing Johnson & Johnson Baby Powder without protecting and/or warning and/or instructing Plaintiff's Decedent and other users of the high risk of injury and death that resulted from exposure to this asbestos and asbestos-containing product. Rather than protecting and/or warning and/or instructing Plaintiff's Decedent and other users of these dangers, Defendants actively concealed their knowledge from Plaintiff's Decedent, Plaintiffs' Decedent's employers, and members of the general public. By their acts and/or omissions, Defendants implied their asbestos and asbestos-containing product was safe for all reasonably foreseeable use. Defendants' implications were particularly egregious because they were aware the implied representations were false. Defendants' conduct exemplifies their conscious disregard of the rights and safety of Plaintiff's Decedent and the general public as a whole that has a great probability of causing substantial harm.

50. Defendants were motivated by their financial interests in the uninterrupted distribution, use, and marketing of their asbestos and asbestos-containing Johnson & Johnson Baby Powder. In furtherance of this financial motivation, Defendants consciously disregarded the safety of Plaintiff's Decedent and other users of their asbestos and asbestos-containing product and were willing to permit their asbestos and asbestos-containing product cause injury to Plaintiff's Decedent, and other frequenters, users, and bystanders.

51. Defendants' conduct constitutes actual malice with a state of mind that is characterized by hatred, ill will or a spirit of revenge. Defendants also demonstrated a conscious disregard for the rights and safety of Plaintiff's Decedent and other users of their asbestos and asbestos-containing Johnson & Johnson Baby Powder product that has a great probability of

causing substantial harm. Therefore, Plaintiff seeks punitive damages to punish and deter Defendants and others from the future commission of like offenses and wrongs.

52. As a direct and proximate result of Defendants' conduct, Plaintiff's Decedent was permanently injured and incurred damages.

### THIRD CAUSE OF ACTION: CONSPIRACY
(As to Defendant Johnson & Johnson and LTL Management, LLC)

Plaintiff adopts, re-alleges and incorporates the allegations in all paragraphs set forth above, and further alleges the following:

53. At all relevant times, the Defendants, having the duty imposed by law, or having assumed the duty, to exercise reasonable care for the safety of the Plaintiff's Decedent and similarly situated persons, acted in concert and conspired in pursuance of a common plan or design to commit the tortious acts alleged herein against Plaintiff's Decedent.

54. Defendants combined with each other, and with non-Defendants, to engage in unlawful and/or tortious conduct. In furtherance of the conspiracy, the Defendants, with knowledge of dangers of exposure to asbestos and asbestos-containing products and with deliberate intent to conceal or misrepresent these dangers known to Defendants, committed the following overt and tortious acts:

    a. fraudulently concealed, misrepresented, and suppressed material scientific and medical information about the toxic and deadly effects of asbestos;

    b. deliberately failed to adequately warn persons in proximity of asbestos of the known health hazards associated with exposure to asbestos and asbestos-containing products;

    c. deliberately breached their duty to instruct about proper ventilation, safety equipment, and/or any other precautionary measures which may have protected against the health hazards of asbestos;

    d. deliberately breached their duty to investigate the health hazards of exposure to asbestos and asbestos-containing products;

      e.    sold asbestos products in a defective condition without necessary warnings of the catastrophic health hazards or instructions concerning precautionary measures; and

      f.    avoided the results of the scrutiny of governmental and safety organizations that would have occurred had Defendants not concealed the true nature and extent of the dangers of their asbestos-containing baby powder product.

55. The Defendants knowingly agreed to participate in the conspiracy by one or more of the following means:

      a.    actively taking part;

      b.    furthering it by cooperation; and/or

      c.    ratifying and adopting acts of other conspirators done for their benefit.

56. The Defendants participated in furthering the unlawful purposes of the conspiracy by delegating responsibilities to and carrying these out through the trade association committees.

57. Upon information and belief, the Defendants committed numerous other overt and tortious acts that are unknown to Plaintiff at this time, in furtherance of the conspiracy through letters, memoranda, publications, meetings, telephone conversations, and other forms of communication directly between the Defendants and through the trade organization committees.

58. Plaintiff's Decedent reasonably relied on Defendants' misrepresentations and failures to warn alleged above; but for Defendants' misrepresentation and failure to warn, Plaintiff's Decedent would not have been exposed to asbestos-containing baby powder. As a direct and proximate result of the Defendants' conspiratorial acts, the Plaintiff's Decedent was exposed to asbestos and asbestos-containing Johnson & Johnson Baby Powder, and developed mesothelioma which caused her death.

**FOURTH CAUSE OF ACTION: LOSS OF CONSORTIUM**
(As to Defendant Johnson & Johnson and Defendant LTL Management, LLC)

Plaintiff adopts, re-alleges and incorporates the allegations in all paragraphs set forth above, and further alleges the following:

59. Plaintiff Charles Jonas has suffered a loss of consortium and has been deprived of the society, companionship, comfort, love, solace, and assistance of Decedent Sharon Jonas who was exposed to the asbestos and/or asbestos-contaminated products as described above, and further that said loss is the direct and proximate result of the acts and/or omissions of the Defendants as described above.

60. As a direct and proximate result of Defendants' conduct, Plaintiff has been permanently injured and incurred damages.

**FIFTH CAUSE OF ACTION: WRONGFUL DEATH**
(As to Defendant Johnson & Johnson and LTL Management, LLC)

Plaintiff adopts, re-alleges and incorporates the allegations in paragraphs set forth above, and further alleges the following:

61. Plaintiff states that he became aware of the fact that Plaintiff's Decedent passed away as a direct and proximate result of an asbestos-related disease within two (2) years of the filing of this complaint.

62. Plaintiff's Decedent died as a direct and proximate result of the acts and omissions of the Defendants complained of above.

63. As a direct and proximate result of the acts and omissions of the Defendants as described above, Plaintiff's Decedent, her spouse, family, and/or estate has incurred reasonable and necessary medical and funeral expenses.

64. As a direct and proximate result of the wrongful death of Plaintiff's Decedent, her

surviving spouse and next-of-kin have suffered compensatory damages including loss of support from the reasonable expected earning capacity of the Decedent; from loss of her services; from loss of society, companionship, consortium, care, assistance, attention, protection, advise, guidance, counsel, instruction, training and education, together with the loss of prospective inheritance and the mental anguish incurred by the surviving spouse and next-of-kin which is expected to continue indefinitely into the future, and all other damages available at law.

WHEREFORE, Plaintiff demands judgment against the Defendants jointly and severally in excess of Twenty-Five Thousand Dollars ($25,000.00) and an amount for punitive damages, costs, expenses and attorneys' fees in this action. A trial by jury is hereby demanded to determine all issues.

Respectfully submitted,

KELLEY FERRARO, LLC

By: */s/ William D. Mason Jr.*
SHAWN M. ACTON (0072675)
WILLIAM D. MASON JR. (0092747)
JOYCE CHAMBERS REICHARD (0096422)
Ernst & Young Tower
950 Main Avenue, Suite 1300
Cleveland, Ohio 44113
Phone: (216) 575-0777
Facsimile: (216) 575-0799
sacton@kelleyferraro.com
mmason@kelley-ferraro.com
jreichard@kelleyferraro.com

*Counsel for Plaintiffs*